IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Criminal Action |
| Plaintiff | ) | No. 03-cr-00538-2 |
| | ) | |
| vs. | ) | Civil Action |
| | ) | No. 07-cv-2862 |
| HOLLY WILLIAMS, | ) | |
| | ) | |
| Defendant | ) | |

\*   \*   \*

APPEARANCES:

> LEO R. TSAO, ESQUIRE
> Assistant United States Attorney
>     On behalf of the United States of America
>
> HOLLY WILLIAMS
>     Pro Se

\*   \*   \*


O P I N I O N

JAMES KNOLL GARDNER,
United States District Judge

> This matter is before the court on the pro se Motion to
Vacate, Set Aside, or Correct Sentence filed July 12, 2007
pursuant to 28 U.S.C. § 2255 by defendant Holly Williams.  Also
before the court is defendant's letter request dated February 10,
2008 requesting appointment of counsel for purposes of her § 2255
motion, and defendant's Brief in Support of Request for
Appointment of Counsel, which brief was filed August 21, 2008.
Finally, before the court is the Government's Motion for Leave to
File Responses Two Days Out of Time, which motion was filed

September 17, 2008.  The Government's Response to Motions for
Appointment of Counsel and for Relief under 28 U.S.C. § 2255 also
was filed September 17, 2008.

          For the following reasons, I grant the Government's
Motion for Leave to File Responses Two Days Out of Time and deny
defendant's Motion to Vacate, Set Aside, or Correct Sentence and
request for appointment of counsel.  I also deny a certificate of
appealability.

<u>PROCEDURAL HISTORY</u>

          On August 26, 2003, a federal grand jury in the Eastern
District of Pennsylvania returned an eighteen-count Indictment
charging defendant and co-defendants Rashiad Snead and June
Chance with conspiracy to interfere with commerce by robbery, in
violation of 18 U.S.C. § 1951 (Count One), interference with
commerce by robbery, in violation of 18 U.S.C. § 1951 (Counts Two
through Nine); using a firearm during a crime of violence, in
violation of 18 U.S.C. § 924(c)(1)(A) (Counts Ten through
Seventeen); and felon in possession of a firearm, in violation of
18 U.S.C. § 922(g)(1) (Count Eighteen, which applied to defendant
Snead only).

          Specifically, defendant Williams was named in Counts
One through Twelve and Fourteen through Seventeen of the
Indictment.  On April 1, 2004, pursuant to a written Guilty Plea
Agreement, defendant Williams entered a plea of guilty to Counts

-2-

One, Two, Three, Four, Six, Seven, Eight, Nine, Eleven and Twelve of the Indictment.

On September 22, 2005, the government filed a Motion to Permit Departure from Guideline Sentencing Range and from Mandatory Minimum Sentence under U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e).  On October 6, 2005, defendant was sentenced by me. At sentencing, the government moved to dismiss Counts Ten, Fourteen, Fifteen, Sixteen and Seventeen of the Indictment.  I granted that motion.  Although defendant was facing a possible maximum penalty of life imprisonment, including a 32-year mandatory minimum, I granted the government's motion for downward departure and sentenced defendant to a total of 108 months imprisonment.  At all relevant proceedings, including the guilty plea hearing and sentencing, defendant was represented by court-appointed counsel, Kurt B. Geishauser, Esquire.

On October 25, 2005, defendant filed a Notice of Appeal from the Judgment in a Criminal Case filed October 17, 2005.  On March 6, 2006, the government filed a motion to enforce the appellate waiver in defendant's written plea agreement.  On June 20, 2006, the United States Court of Appeals for the Third Circuit granted the government's motion to enforce the appellate waiver and dismissed defendant's appeal.  On July 12, 2007, defendant, acting pro se, filed the within motion for habeas

-3-

corpus relief under 28 U.S.C. § 2255, together with a request to proceed in forma pauperis for purposes of her § 2255 motion.

On February 13, 2008, defendant submitted the within letter request to the Clerk of Court seeking appointment of counsel, but did not support her request with a brief or affidavit alleging specific facts in support of her request or her § 2255 motion.  By Order dated July 18, 2008, I granted petitioner's request to proceed in forma pauperis and gave defendant until on or before September 18, 2008 to file a motion for appointment of counsel accompanied by an appropriate brief or affidavit.[1]  On August 21, 2008, defendant filed her Brief in Support of Request for Appointment of Counsel.

By Order dated August 27, 2008, I gave the government until on or before September 15, 2008 to respond to defendant's § 2255 motion and request for appointment of counsel.  On September 17, 2008, the government filed its within Motion for Leave to File Responses Two Days Out of Time, together with its brief in response to defendant's § 2255 motion and request for appointment of counsel.  As an initial matter, I grant the Motion for Leave to File Responses Two Days Out of Time and consider the government's brief timely.

---

[1]     See White v. Williamson, 2008 WL 2020293, at *1 (M.D.Pa., May 8, 2008)(Vanaskie, J.)(noting that in evaluating whether a habeas petitioner's motion for appointment of counsel should be granted, a threshold determination is "whether the petitioner's case has some arguable merit in fact and law")(citing Montgomery v. Pinchak, 294 F.3d 492, 499 (3d Cir. 2002)).

CONTENTIONS OF THE PARTIES

Defendant's Contentions

Defendant's § 2255 motion enumerates three grounds in support of her request for modification of her sentence.  First, she contends that she was denied effective assistance of counsel because the government "failed to establish proof of charge and counsel did not object".  Second, she alleges a violation of due process because her guilty plea was "unlawfully induced", and was "not made voluntarily or with the understanding of the nature of the charge or consequences of the plea".  Finally, defendant alleges a violation of the Fourteenth Amendment to the United States Constitution because her attorney failed "to conduct [an] evidentiary hearing which would have established that defendant did not actually possess [the] weapon defendant was charged with".  (Defendant's § 2255 motion, page 6.)

In her Brief in Support of Request for Appointment of Counsel, defendant sets forth her contentions more specifically. She avers that her guilty plea was not entered intelligently because Attorney Geishauser and the court failed to explain the elements of the crimes with which she was charged, and that she was not fully aware of the relevant circumstances and likely consequences of entering a guilty plea.  Moreover, she contends that Attorney Geishauser misled her regarding the "degree of the offense" to which she pled guilty.

-5-

Defendant further contends that the government failed to prove, beyond a reasonable doubt, that she used a weapon in violation of 18 U.S.C. § 924(c)(1).  Finally, defendant avers that the court imposed an illegal sentence resulting from an incorrect application of the United States Sentencing Guidelines, leading to an erroneous upward departure from the correct guideline range.  Moreover, based on these contentions regarding the merits of her § 2255 motion, defendants seeks appointment of counsel to assist her with her § 2255 motion.

<u>Government's Contentions</u>

The government contends that defendant's § 2255 motion and request for appointment of counsel should be denied. Specifically, regarding defendant's contends that her attorney was ineffective for not objecting to the government's alleged failure to establish "proof of charge",  the government avers that at the change of plea hearing, defendant listened to the factual basis for the plea, understood those facts, and admitted them.  Therefore, the government contends that defendant's attorney was not ineffective for failing to object to the "proof of charge".  Moreover, the government notes that at the guilty plea hearing, defendant stated that she was satisfied with her attorney's services and that he had provided effective assistance.

Regarding defendant's assertion that her plea was unlawfully induced and was not made voluntarily or with knowledge of the consequences of her plea, the government responds that the record of the guilty plea hearing belies these contentions. Specifically, the government avers that the court reviewed all of defendant's constitutional rights, including her right to plead not guilty and proceed to trial; reviewed the terms of defendant's plea agreement; confirmed that no one had forced, threatened, coerced, intimidated or used undue or improper influence to get her to plead guilty; and explained all of the possible maximum and minimum penalties for the offenses to which she was pleading guilty, and confirmed that she understood them.

Moreover, the government states that at the guilty plea hearing, defendant further confirmed that she was pleading guilty of her own free will, and that she was pleading guilty because she was, in fact, guilty of the offenses charged.  The government contends that based on the guilty-plea colloquy, the court found defendant's guilty plea to be knowing and voluntary, and avers that nothing in the record suggests otherwise.

Regarding defendant's contention that her Fourteenth Amendment rights were violated by her attorney's failure to request an evidentiary hearing on whether she actually possessed the weapons with which she was charged, the government avers that defendant admitted to conspiring with her co-defendants to rob

several stores, and that during those robberies, firearms were brandished.  The government contends that although defendant did not actually enter the stores or brandish the weapons, she served as the getaway driver and shared in the proceeds, and is therefore responsible for the weapons brandished.

Finally, the government contends that defendant's request for appointment of counsel should be denied because there is no right to counsel on collateral attacks to a conviction in noncapital cases.  Moreover, the government avers that the interests of justice do not warrant such appointment in this case because defendant's claims are meritless and there is no need for an evidentiary hearing.

<u>STANDARD OF REVIEW</u>

Title 28 of United States Code section 2255 provides federal prisoners with a vehicle for challenging an unlawfully imposed sentence.  Section 2255 provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255.

-8-

A motion to vacate sentence under § 2255 "is addressed to the sound discretion of the court."  United States v. Williams, 615 F.2d 585, 591 (3d Cir. 1980).  A petitioner may prevail on a § 2255 habeas claim only by demonstrating that an error of law was constitutional, jurisdictional, "a fundamental defect which inherently results in a complete miscarriage of justice", or an "omission inconsistent with the rudimentary demands of fair procedure".  Hill v. United States, 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417, 421 (1962).

<u>DISCUSSION</u>

<u>Defendant's § 2255 Motion</u>

The government's brief notes, in its recitation of the procedural history of this matter, that on defendant's direct appeal the government successfully sought to enforce the appellate waiver contained within defendant's guilty plea agreement.  However, the government here does not seek to enforce the similar provision of the agreement regarding waiver of defendant's right to a collateral appeal.  Rather, the government's brief addresses each of defendant's contentions on the merits.  Accordingly, I address the grounds for defendant's motion on the merits without discussion of whether defendant has waived her right to take this collateral appeal.

All three of defendant's grounds for relief are essentially claims of ineffective assistance of counsel.

-9-

Therefore, I address them together.  Specifically, defendant contends that Attorney Geishauser was ineffective for failing to object to the government's alleged failure to establish "proof of charge";[2] that her guilty plea was not knowing and voluntary because Attorney Geishauser failed to fully explain to her the consequences of entering such a plea; and that Attorney Geishauser failed to request an evidentiary hearing on whether she actually possessed the weapons with which she was charged.[3]

A claim of ineffective assistance of counsel involves two elements which must be shown by defendant: (1) counsel's performance must have been deficient, meaning that counsel made errors so serious that he was not functioning as "the counsel" guaranteed by the Sixth Amendment; and (2) the deficient performance prejudiced the defense.  Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984).

To establish a deficiency in counsel's performance, a convicted defendant must demonstrate that the representation fell below an "objective standard of reasonableness" based on the particular facts of the case and viewed at the time of counsel's

---

[2]    I construe defendant's reference to "proof of charge" as an argument that the government failed to provide a sufficient factual basis to support her plea of guilty to the charges in the Indictment.

[3]    Defendant refers to her third ground as violation of the Fourteenth Amendment, however, I construe it as a claim for ineffective assistance of counsel under the Sixth Amendment.

conduct.  Strickland, 466 U.S. at 688, 104 S.Ct. at 2064-2065,
80 L.Ed.2d at 693-694; Senk v. Zimmerman, 886 F.2d 611, 615
(3d Cir. 1989).  There is a "strong presumption that counsel's
conduct falls within the wide range of reasonable professional
assistance; that is, the defendant must overcome the presumption
that, under the circumstances, the challenged action 'might be
considered sound trial strategy'".  Strickland, 466 U.S. at 689,
104 S.Ct. at 2065, 80 L.Ed.2d at 694-695 (internal citation
omitted).

To establish the second Strickland prong, "defendant
must show that there is a reasonable probability that, but for
counsel's unprofessional errors, the result of the proceeding
would have been different."  Strickland, 466 U.S. at 694,
104 S.Ct. at 2068, 80 L.Ed.2d at 698.

Defendant's averments regarding her attorney's
effectiveness are belied by the record of the extensive guilty
plea colloquy before me on April 1, 2004, at which defendant
stated under oath that her attorney had provided effective
assistance and that she fully understood the terms and
consequences of her plea agreement.  However, even if defendant
is correct that her attorney did not fully explain to her the
details of her Guilty Plea Agreement or the consequences of
entering a guilty plea, defendant cannot establish any prejudice
resulting from such an alleged failure, because the record of the

hearing indicates that the terms of the Guilty Plea Agreement, maximum penalties, and factual basis for the plea were all explained to defendant during the hearing.

At the April 1, 2004 hearing, defendant testified that she was satisfied with Attorney Geishauser's services and that he had explained, to her satisfaction, the details of her plea agreement:

> THE COURT:       Has your attorney gone over the charges against you and with you?
>
> THE DEFENDANT: Yes, he has, your Honor.
>
> THE COURT:       Has your attorney gone over with you of any possible defenses which you might bring to these charges?
>
> THE DEFENDANT: Yes.
>
> THE COURT:       Has your attorney talked to you about a plea agreement?
>
> THE DEFENDANT: Yes.
>
> THE COURT:       Has he gone over with you the terms and conditions and details of the plea agreement?
>
> THE DEFENDANT: Yes, he has, your Honor.
>
> THE COURT:       Has your attorney explained with you the rights you would have if you pleaded not guilty and went to trial?
>
> THE DEFENDANT: Yes.
>
> THE COURT:       Did you have an opportunity to ask your attorney questions that you might have had about those subjects?

```
THE DEFENDANT: Yes, I have, your Honor.

THE COURT:      Did your attorney answer all of
                your questions to your
                satisfaction?

THE DEFENDANT: Yes.

THE COURT:      Did you understand all of your
                attorney's answers?

THE DEFENDANT: Yes, I have.

THE COURT:      Have you had enough time to discuss
                these things with your lawyer?

THE DEFENDANT: Yes, I have, your Honor.

THE COURT:      Are you satisfied with the services
                of your attorney in this case?

THE DEFENDANT: Yes, I am.

THE COURT:      Are you satisfied that Mr.
                Geishauser has provided you with
                effective assistance as your
                lawyer?

THE DEFENDANT: Yes.

THE COURT:      So far, has Mr. Geishauser done
                everything for you in this case
                that you wanted him to do?

THE DEFENDANT: Yes, your honor.[4]
```

Defendant further stated at the guilty plea hearing that prior to signing her guilty plea agreement and acknowledgment of rights document, she had discussed both

---

[4]     Notes of Testimony of the hearing conducted on April 1, 2004 before me in Philadelphia, Pennsylvania, styled "Hearing before the Honorable James Knoll Gardner[,] United States District Judge" ("N.T."), at pages 11-13.

documents with Attorney Geishauser and that she fully understood both documents.  N.T. at page 13.

Moreover, government counsel, Assistant United States Attorney Kathleen M. Rice, thoroughly summarized the terms of defendant's guilty plea agreement.  N.T. at pages 15-22.  This recitation included a provision of the agreement whereby defendant agreed that she was satisfied with the legal representation provided by her lawyer, and that she and her lawyer had fully discussed the plea agreement.  N.T. at 21.  Following Attorney Rice's summary of the terms of the plea agreement, defendant testified that she heard, understood, and agreed with all of the terms of the agreement:

> THE COURT:      Ms. Williams, did you hear the
> Government attorney telling me what
> the terms and conditions of your
> plea bargain are?
>
> THE DEFENDANT: Yes, I have, your Honor.
>
> THE COURT:      Did you understand everything she
> told me?
>
> THE DEFENDANT: Yes.
>
> THE COURT:      Are those all of the terms and
> agreements of your guilty plea
> agreement as you understand it?
>
> THE DEFENDANT: Yes, I have.
>
> THE COURT:      Did she leave out any conditions or
> details or promises?
>
> THE DEFENDANT: No.
>
> . . .

> THE COURT:        Okay. Do you, in fact, agree to all
>                   of those terms and agreements?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT:        Do you understand that no one can
>                   guarantee you what sentence you
>                   will get from me?
>
> THE DEFENDANT: Yes.
>
> THE COURT:        Did anyone force you or threaten
>                   you or intimidate you or coerce you
>                   or use any undue or improper
>                   influence to get you to agree to
>                   this guilty plea agreement?
>
> THE DEFENDANT: No.  Not this agreement, your
>                   Honor.
>
> THE COURT:        Are you agreeing to this
>                   voluntarily and of your own free
>                   will?
>
> THE DEFENDANT: Yes, I am.

N.T. at pages 24-25.

Thus, it is clear from the record that defendant averred, under oath, that she understood all of the provisions of her Guilty Plea Agreement, including her agreement that she was satisfied with Attorney Geishauser's representation.

With regard to defendant's contention that she did not fully understand the consequences of her guilty plea, I note that the court explained all of the statutory maximum and minimum punishments applicable to Counts One, Two, Three, Four, Six, Seven, Eight, Nine, Eleven and Twelve of the Indictment.  N.T. at pages 26-29.  I further advised defendant that, in total, her

-15-

maximum possible sentence would be life imprisonment; and that her total mandatory minimum, unless a motion for downward departure was granted (which, at sentencing, it was) would be 32 years of imprisonment, five years of supervised release, a $2,500,000.00 fine, and a $1,000.00 special assessment, in addition to any applicable restitution.  N.T. at page 29.  The defendant stated that she understood all of the maximum and minimum penalties.  <u>Id.</u>

The record of the guilty plea hearing reflects that I also explained to defendant all of her constitutional and appeal rights, including those that she would be giving up by pleading guilty.  N.T. at pages 33-43.  Defendant indicated, on the record, that she understood each of those rights and which of them she would be giving up.  <u>Id.</u>

Accordingly, I conclude that defendant's contention that § 2255 relief is warranted based on her attorney's failure to explain the details and consequences of her plea is unfounded. As the record reflects, defendant testified that she had had sufficient time to discuss the case, including her plea agreement, with her attorney; he had answered all of her questions; and she was satisfied with his representation. Moreover, defendant cannot satisfy the prejudice prong of the <u>Strickland</u> test because, even if Attorney Geishauser did not fully explain to defendant the consequences of her plea

-16-

agreement, defendant stated on the record that she understood government counsel's recitation of the plea agreement as well as the court's explanation of the potential penalties and rights she would be giving up.

Defendant's contention that her attorney was ineffective for not objecting to the government's failure to establish the elements of the offenses charged is similarly unfounded.  Defendant makes two related arguments on this point: first, that Attorney Geishauser did not object generally; and second, that he did not request a hearing to determine whether defendant actually possessed the weapon with which she was charged.  Neither contention warrants relief under § 2255.

At the April 1, 2004 hearing, I explained to defendant that if she went to trial, the government would be required to prove beyond a reasonable doubt the elements of each offense with which she was charged.  N.T. at page 43.  Further, I explained all the elements of each offense to which defendant was pleading guilty, and I incorporate those elements here.  N.T. at pages 43-47.  For each offense, defendant testified that she understood the elements as I explained them, and admitted that the respective elements correctly described what she did on the occasion of each offense.

Thereafter, Attorney Rice summarized the facts which the government would have proven, if the case had gone to trial.

-17-

Attorney Rice's recitation of those facts is as follows:

> Your Honor, the evidence would show that Ms.
> Williams became involved in this conspiracy on May
> 19th after Rashiad Snead robbed the La
> Chiquita Grocery located at 657 North 9th Street
> at gunpoint.  Ms. Williams picked Mr. Snead up
> after the robbery and they both returned to 1024
> Locust Street.  On May 19th, later that day of
> 2003, Ms. Williams drove to the Buena Vista
> Grocery Store which is located at 1200 Oley
> Street....[i]n Reading.  That store was robbed by
> Mr. Snead at gunpoint.  And while Mr. Snead was
> inside the store, the evidence would show that
> Holly Williams remained in the vicinity in her
> blue Mercury Marquis with June Chance while Mr.
> Snead was robbing the store.  After Snead left the
> store, he came back to the car and Williams drove
> the three of them away from the robbery.  And they
> all split the proceeds of that crime.
>
> . . .
>
> On May 21st of 2003, the Ralph's Food Market was
> robbed.  The evidence would show that Mr. Snead
> entered that store with the gun, demanded money
> and got $240 from the cashier in addition to
> several cans of cat food.  After leaving the scene
> of the robbery, Mr. Snead returned to Holly
> Williams' car where both she and June Chance were
> waiting for Mr. Snead.  Williams had driven Mr.
> Snead to the location of the robbery.  The money
> was given to June Chance and she split it three
> ways among Snead, Williams and Chance.  On May
> 25th of 2003, International Deli located at 348
> North 5th Street was robbed by Mr. Snead at
> gunpoint during which $350 was taken by Mr. Snead
> – taken from the cashier.  After leaving the
> robbery, Mr. Snead returned to Holly Williams and
> June Chance who were again, waiting in Ms.
> Williams' car, the blue Mercury Marquis, in the
> vicinity of the robbery, which is where Ms.
> Williams and Ms. Chance waited while Mr. Snead
> committed the robbery.  Again, the proceeds of
> that robbery were split between the three co-
> defendants.
>
> . . .

Later on in the day of May 25th of 2003, Amazana Store located at 1400 Perkiomen Street was robbed at gunpoint by Mr. Snead during which $300 in cash was taken from the cash register - from the cashier.  Again, at that robbery, the evidence would show that Holly Williams drove Mr. Snead to the location of the robbery.  And while Mr. Snead was robbing the store, the evidence should show that Holly Williams and June Chance remained in Ms. Williams' car, the blue Mercury Marquis, while Mr. Snead robbed the store.  When he returned, he gave the money again to June Chance who divided the money three ways.

On May 27th of 2003, the Bohn Grocery Store located at 1049 Franklin Street in Reading, was robbed...at gunpoint by Mr. Snead during which $100 United States currency was taken by Mr. Snead along with some merchandise, including a bottle of seasoning and fruit punch.  Again, Ms. Williams drove Mr. Snead to the location of this robbery with June Chance and remained in her...blue Mercury Marquis in the vicinity of the 100 block of Franklin Street and waited there until Mr. Snead returned.  At which point Mr. Snead gave the money again to June Chance and she counted it and split it three ways.

Again, the evidence would show that during the execution of the Search Warrant at 1024 Locust Street, the home of Ms. Williams, the police found a bottle of fruit punch that was taken during this robbery by Mr. Snead.  That bottle was found in the recycling bin on the back porch of 1024 Locust Street.  On May 27th, 2003 later that day, the El Gallito Grocery Store located at 350 North 10th Street in Reading was robbed at gunpoint by Mr. Snead who entered the store, took a bottle of Hawaiian Punch, placed it on the counter and gave the cashier a $10 bill.  When the cashier went to give change to Mr. Snead, he pulled out his gun and demanded money. The cashier ended up giving Mr. Snead approximately $350.  Mr. Snead went back - returned to the car, Ms. Williams's car, where she and June Chance were waiting.  And they were in the vicinity - waiting for him in the vicinity of 10th & Buttonwood Street.  And Mr. Snead

-19-

> entered the car.  The three fled the scene and the money was split three ways.

N.T. at pages 48-51.

Following the recitation of the facts, defendant Williams stated that she heard and understood all of these facts alleged by the government and that she fully admitted all of the facts.  N.T. at page 52.  Defendant further averred that she wished to enter a plea of guilty, and that she was doing so voluntarily and of her own free will; and that she was pleading guilty because she was, in fact, guilty of the offenses charged.  N.T. at pages 52-53.

Based upon the representations made by defendant during the guilty plea colloquy, I found that she was fully alert, competent and capable of entering informed pleas.  N.T. at page 54.  Moreover, I found that her pleas were each knowing and voluntary, supported by an independent basis in fact containing each of the essential elements of those offenses to which defendant pled guilty, that is, one count of conspiracy to interfere with commerce by robbery; seven counts of interference with commerce by robbery; and two counts of using a firearm during a crime of violence.  Id.  I incorporate those findings here.

Because defendant admitted all of the facts proffered by the government, and because I found that defendant's guilty pleas were knowing, voluntary and supported by a factual basis,

-20-

defendant's contention that her attorney was ineffective for not objecting to the government's alleged failure to establish proof of the charges is unfounded.  As discussed above, defendant agreed not only that all of the foregoing facts were true, but also that she understood the elements of each offense to which she was pleading guilty and agreed that they correctly described her conduct.

With the exception of her assertion that she did not actually "use" a firearm during a crime of violence, defendant does not now contend that the facts she previously admitted are untrue.  Rather, she argues that her attorney was ineffective for not objecting to the government's purported failure to prove those facts.  As I explained to defendant at the guilty plea hearing, by pleading guilty, she waived her right to a trial and the government was therefore not required to prove her guilt. N.T. at page 40.  Defendant stated that she understood this.  <u>Id.</u>

Based on defendant's admission of the facts and her decision to enter a guilty plea, therefore, her attorney would have had no basis for an objection regarding the government's proof.  Accordingly, I conclude that defendant cannot establish the first <u>Strickland</u> prong because her attorney's conduct was not deficient.

Finally, regarding defendant's allegation that her attorney should have requested a hearing on the issue of whether

she actually "used" a firearm during a crime of violence, I agree with the government's contention that as a co-conspirator, defendant was responsible for the weapons brandished during the robberies even though she did not actually possess them herself.

The criminal act of one conspirator in furtherance of the conspiracy is attributable to the other conspirators for the purpose of holding them responsible for the substantive offense. United States v. Lopez, 271 F.3d 472, 480 (3d Cir. 2001)(citing Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946)).  Therefore, because defendant Williams pled guilty to conspiracy to interfere with interstate commerce by robbery, the criminal acts of her co-conspirators in furtherance of that conspiracy (i.e., defendant Snead's use of the firearm during the robberies) is attributable to defendant Williams, and she can be held responsible for the substantive offense of using a firearm during a crime of violence even though she did not personally possess the firearm.

Moreover, Counts Eleven and Twelve, which charge the substantive counts of using a firearm during a crime of violence to which defendant Williams pled guilty, include a charge of aiding and abetting pursuant to 18 U.S.C. § 2.  According to that statute, "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."  18 U.S.C. § 2(a).

-22-

At the guilty plea hearing, I explained the elements of using a firearm during a crime of violence, including aiding and abetting such use.  N.T. at page 47.  Defendant stated she understood those elements and admitted they correctly described her conduct. Id.  Because defendant admitted to aiding and abetting the use of a firearm during a crime of violence, she is punishable as a principal under 18 U.S.C. § 2.

Accordingly, I conclude that defendant has not shown that her attorney's conduct was deficient in not seeking a hearing to determine whether defendant actually possessed the weapon.  As noted above, because defendant admitted the facts of this case, the government was not required to prove (at a hearing or at trial) the elements of each offense.  Defense counsel's conduct therefore was not deficient, and no relief is warranted under § 2255 for ineffective assistance of counsel.

Accordingly, because I conclude, based on a review of the record of this case, that none of the grounds set forth in defendant's § 2255 motion justify any relief under that section, I deny the motion without an evidentiary hearing.  See Williams, 615 F.2d at 591-592.

### Request for Appointment of Counsel

Rule 8(c) of the Rules Governing Section 2255 Proceedings for the United States District Courts provides that "[i]f an evidentiary hearing is warranted, the judge must appoint

an attorney to represent a moving party who qualifies to have counsel appointed...[as an indigent]."  See also United States v. Bendolph, 409 F.3d 155, 160 (3d Cir. 2005).  Otherwise, there is no federal constitutional right to counsel on a collateral attack, and the decision to appoint counsel is left to the discretion of the court.  Pennsylvania v. Finley, 481 U.S. 551, 555, 107 S.Ct. 1990, 1993, 95 L.Ed.2d 539, 545-546 (1987); see also 18 U.S.C. § 3006A(a)(2)(B), which states that "[w]henever... the court determines that the interests of justice so require, representation may be provided" in a § 2255 proceeding)(emphasis added).

Because I conclude that an evidentiary hearing is unnecessary in this case, defendant is not entitled to appointment of counsel for this proceeding.  Moreover, because I have determined that defendant's claims lack merit, I conclude that the interests of justice do not require appointment of counsel in this case.  Accordingly, I deny defendant's request for appointment of counsel.[5]

---

[5]    Defendant's brief in support of her request for appointment of counsel avers, "[i]n conclusion, [that] the defendant's sentence was imposed in violation of law as a result of an incorrect application of the sentencing guidelines.  The judge erroneously departed upward from the otherwise applicable sentencing range."  Defendant has offered no legal analysis in support of this argument, did not raise the issue in her § 2255 motion, and has offered no factual basis for this bald allegation.  Accordingly, I do not address this argument on the merits.

Moreover, as discussed above in Procedural History, I note that although defendant was facing a possible maximum penalty of life imprisonment, including a 32-year mandatory minimum, I granted the government's motion for

(Footnote 5 continued):

<u>Certificate of Appealability</u>

The Rules for the Third Circuit Court of Appeals require that "[a]t the time a final order denying a petition under 28 U.S.C. § 2255 is issued, the district judge shall make a determination as to whether a certificate of appealability should issue."  Third Cir. Loc. App. R. 22.2.  A certificate of appealability shall issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Here, jurists of reason would not debate the conclusion that defendant's § 2255 motion fails to state a valid claim of the denial of a constitutional right.  Accordingly, a certificate of appealability is denied.

<u>CONCLUSION</u>

For all the foregoing reasons, I grant the Government's Motion for Leave to File Responses Two Days Out of Time and deem timely the government's response brief filed September 17, 2008; I deny defendant's Motion to Vacate, Set Aside, or Correct Sentence; and I deny defendant's request for appointment of counsel.  Moreover, a certificate of appealability is denied.

---

(<u>Continuation of footnote 5</u>):

downward departure and sentenced defendant to a total of 108 months imprisonment.  Therefore, it is difficult to construe a factual basis for defendant's assertion of an erroneous upward departure.